## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AYMAN R. HAKKI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| ZIMA COMPANY, | : | |
| Coors Brewing Company | : | |
| d.b.a. Zima Beverage Company | : | |
| 311 10th Street | : | |
| Golden, CO 80401, | : | |
| | : | |
| ADOLPH COORS COMPANY, | : | |
| 311 10th Street | : | |
| Golden, CO 80401, | : | |
| | : | |
| COORS BREWING COMPANY | : | |
| 311 10th Street | : | |
| Golden, CO 80401, | : | |
| | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## NOTICE OF REMOVAL

Defendants, Zima Beverage Company, Adolph Coors Company, and Coors Brewing Company (hereafter collectively called "Coors"), by and though their undersigned counsel file this Notice of Removal of an action pending in the Superior Court of the District of Columbia, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  In support of this Notice of Removal, Coors states as follows:

1)   On November 14, 2003, a civil action was filed in the Superior Court for the District of Columbia, Civil Division, entitled *Ayman R. Hakki, on behalf of himself, all others*

*similarly situated and the general public v. Zima Company, et al.*, Case Number 03-0009183.

*See* Exhibit A. Plaintiff seeks damages, disgorgement or restitution of certain revenues and other injunctive relief under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("the Act" or "DCCPPA") and District of Columbia common law of negligence, rescission and unjust enrichment. Plaintiff brings this suit individually and on behalf of two purported classes consisting of "all persons who were or are parents or guardians of children whose funds were used to purchase alcoholic beverages marketed by defendants which were consumed without their prior knowledge by their children under the age of 21 during the period from 1982 to the present" and of "parents and guardians of all children currently under the age of 21."[1] (Compl. ¶ 38 (A) and (B).)

2)      This Notice of Removal is filed subject to and with full reservation of rights by each and every defendant, including but not limited to defenses and objections to venue, improper service of process, personal jurisdiction, and any others that each defendant might pursue.

3)      This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

4)      Coors has made diligent inquiry to identify those defendants upon whom purported service has been made. All defendants upon whom purported service has been made with a summons and complaint consent to this removal. *See* Exhibit B. The consent of the defendants that have not yet been served is not required. 28 U.S.C. § 1441(b); *Williams v. Howard*, 984 F. Supp. 27, 30 n.5 (D.D.C. 1997); *accord, Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). If such consent were required, however, Coors reasonably believes and alleges that it would be provided by all of the remaining defendants.

---

[1]      For purposes of this Notice of Removal, the two classes will be referred to as a single class.

5)      Written notice of the filing of this Notice of Removal has been provided to the plaintiff and the courts by Coors.  A copy of this Notice has been filed in the District of Columbia Superior Court, concurrent with this Notice, pursuant to 28 U.S.C. § 1446(d).

## DIVERSITY JURISDICTION

6)      This Court has original diversity jurisdiction over this action under 28 U.S.C. §1332 because (1) on the face of the complaint, it is clear that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) there is complete diversity of citizenship between the plaintiffs and all defendants except The Beer Institute which, as further explained below, has been fraudulently joined in order to defeat the jurisdiction of this Court.

## AMOUNT IN CONTROVERSY

7)      Plaintiff demands disgorgement of defendants' sales revenues and restitution of the plaintiff's expended family assets allegedly associated with the illegal purchase and consumption of alcohol by persons under the age of 21.  (Compl. ¶¶ 75, 107, Prayer for Relief.) Additionally, the complaint seeks rescission of all alleged sales of alcoholic beverages to underage consumers and the disgorgement of revenues derived from such alleged sales to an alleged class of parents and guardians.  Plaintiff alleges that these sales revenues are associated with the illegal purchase and/or consumption of alcoholic beverages by underage individuals, and seeks disgorgement and restitution in amounts described as ranging from $22.5 billion in a single year (Compl. ¶ 7) to "greatly exceed[ing] $1 billion per year."  (Compl. ¶ 75.)

8)      The plaintiff's claimed remedies contradict his preemptive effort to avoid federal jurisdiction.  Even if each member of the plaintiff class does not independently satisfy the amount-in-controversy requirement, the value of the aggregated claims of the entire class can collectively satisfy that requirement when the class seeks a common and undivided remedy.

*Snyder v. Harris*, 394 U.S. 332, 335 (1969) (amount in controversy threshold met where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest"). Thus, in *Williams v. Purdue Pharma Co.*, No. 02-0056 (RMC), 2003 U.S. Dist. LEXIS 19268, at *12–20 (D.D.C. Feb. 27, 2003), plaintiffs pursued a "common and undivided interest" by demanding that defendant disgorge revenues resulting from an alleged "misleading marketing campaign" under the District of Columbia Consumer Protection Procedures Act. *Id.* at *18 ("With a potential class of 5,000-10,000 pain sufferers in the District of Columbia . . . and recent annual sales of OxyContin in the billions of dollars . . . , the complaint seeks a common and undivided remedy of 'all moneys acquired' by defendants through Oxycontin sales in the District of Columbia," easily satisfying the amount-in-controversy threshold). Likewise, in *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 40–43 (D.D.C. 1999), the court held that an undifferentiated demand for disgorgement of profits seeks a remedy that "would inure to the benefit of the class rather than vindicate any alleged violation of individual rights." *Id.* at 41. On this basis, the court found that the plaintiff class had a common interest in the remedy that exceeded the amount-in-controversy requirement. Likewise, plaintiff's prayer here that defendants be required to disgorge "revenues from the illegal sale of alcoholic beverages to underage consumers," described in the complaint as involving billions of dollars of alleged sales revenues, plainly exceeds the $75,000 monetary threshold for jurisdiction. (*See, e.g.,* Compl. ¶¶ 7, 8, 19, 48, Prayer for Relief Nos. 3, 4.)

9)      Plaintiff also seeks to "[e]njoin defendants from engaging in any marketing of alcoholic beverages to underage persons." (Compl. Prayer for Relief No. 5.) Plaintiff alleges that "Defendants' marketing efforts directed at underage drinkers generate a substantial portion of their revenues and profits and are crucial to their overall strategy[,] resulting in billions of dollars

per year in illegal profits." (Compl. ¶ 7.) Plaintiff reports sources indicating that the amount of

alcohol consumed by underage persons accounts for as much as $22.5 billion of revenue to the

defendants per year. (Compl. ¶ 7.) The remainder of the complaint alleges repeatedly and in

various ways that the alleged marketing efforts are "numerous" and "extensive" and involve "at

least a billion dollars [of allegedly illegal sales revenue] per year" and "hundreds of millions" of

advertising messages. (Compl. ¶¶ 7, 8, 19, 48.) The requested injunction is sought on behalf of

all plaintiffs to vindicate a supposed common or public interest and, therefore, is not divisible.

*See Aetna*, 48 F. Supp. 2d at 41, citing *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983).

Coors denies that plaintiff is entitled to any such relief, but the allegations of the complaint, if

assumed only for the purposes of this Notice to be true, describe and seek an injunction that

would clearly impose both compliance costs and economic consequences far in excess of

$75,000. *See The Committee for GI Rights v. Callaway,* 518 F.2d 466, 472 (D.C. Cir. 1975)

("[T]he amount in controversy is the pecuniary interest of either party").

      10)    Moreover, plaintiff seeks "treble damages or $1500 per violation, whichever is

greater, punitive damages, attorneys fees, costs of suit, and interest." (Compl. Prayer for Relief

6.) Punitive damages may be considered in determining whether the amount in controversy

requirement has been satisfied. *See Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66-68 (D.D.C.

2002). Additionally, statutory attorneys fees may be considered in determining whether the

amount in controversy requirement has been satisfied. *Manguno v. Prudential Prop. & Cas. Ins.

Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("If a state statute provides for attorney's fees, such fees

are included as part of the amount in controversy."); *accord Momin v. Maggiemoo's Int'l, L.L.C.*,

205 F. Supp. 2d 506, 509 (D. Md. 2002); 14B Wright & Miller, *Federal Practice & Procedure* §

3712 (1998) ("The law is now quite settled ... that the amount expended for attorney's fees are a

part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract or by state statute.")

Given the vast sums plaintiff seeks in damages, disgorgement and restitution, and the allegations of deliberate and long-standing wrongdoing contained in plaintiff's complaint, a reasonable reading of the prayers for punitive damages and statutory attorneys fees makes clear that the amount in controversy exceeds $75,000. *See, e.g., Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (where no specific amount in controversy is pled, court may "determine that removal was proper if it is facially apparent that the claims are likely above" the jurisdictional amount).

11)     Alternatively, because at least one plaintiff's claim in this case is within this Court's diversity jurisdiction, supplemental jurisdiction exists under 28 U.S.C. § 1367, as to any other claims in this case. *See Rosmer v. Pfizer, Inc.*, 263 F.3d 110 (4th Cir. 2001); *In re Abbott Labs.*, 51 F.3d 524, 529 (5th Cir. 1995); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 939-40 (9th Cir. 2001); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1253-54 (11th Cir. 2003).

## DIVERSITY OF CITIZENSHIP

12)     This Court has diversity jurisdiction over this matter because the citizenship of the plaintiff and defendants, other than the fraudulently joined The Beer Institute, are entirely diverse.  28 U.S.C. § 1332.

13)     As the complaint reveals, the plaintiff is a citizen of Washington D.C., (Compl. ¶ 29.)

14)     For the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332(c)(1), a corporation is deemed to be a citizen of its state of incorporation and of the state where it has its

principal place of business.  As alleged on the face of the plaintiff's complaint, all of the

defendants, other than the fraudulently joined The Beer Institute, are citizens of states or foreign

countries other than the District of Columbia:

a)   Adolph Coors Company is incorporated in the State of Delaware and has
its principal place of business in the State of Colorado.

b)   Coors Brewing Company is incorporated in the State of Colorado and has
its principal place of business in Colorado.

c)   Zima Brewing Company is not a corporation or other business entity, but
is instead a trade name used by Coors Brewing Company and as such has
no "citizenship" apart from Coors Brewing Company (*see* subparagraph
14(b), above).

d)   There is no corporate or other business entity by the name of Mike's Hard
Lemonade Company.  It is instead a trade name used by one or more of
the firms referenced in sub-paragraphs (e) to (g) and as such has no
separate citizenship.

e)   There is no corporate or other business entity by the name of Mark
Anthony Group.  Mark Anthony Group Company Ltd. is incorporated in
and has its principal place of business in Canada.

f)   There is no corporate or other business entity by the name of Mark
Anthony International.  Mark Anthony International SRL is incorporated
in and has its principal place of business in Barbados.

g)   Mark Anthony Brands Ltd. is incorporated in and has its principal place of
business in Canada.

h)   Bacardi USA, Inc. is incorporated in the State of Delaware and has its principal place of business in the State of Florida.

i)   Bacardi Limited is incorporated in Bermuda and has its principal place of business in Bermuda.

j)   Bacardi & Company Limited is incorporated in Liechtenstein and has its principal place of business in the Bahamas.

k)   There is no corporate or other business entity by the name of Bacardi Group.  To the extent that the Complaint's reference to "Bacardi Group" is meant to refer to the other named Bacardi defendants, none of these defendants is a citizen of the District of Columbia (*see* subparagraphs 14(h)-(j), above).

l)   Kobrand Corporation is incorporated in the State of New York and has its principal place of business in the State of New York.

m)   Heineken, N.V. is a company organized under the law of the Netherlands and has its principal place of business in the Netherlands.

n)   Heineken U.S.A., Inc. is incorporated in the State of New York and has its principal place of business in the State of New York.

o)   Brown-Forman Corporation is incorporated in the State of Delaware and has its principal place of business in the Commonwealth of Kentucky.

p)   Brown-Forman Beverages Worldwide is an unincorporated operating division of Brown-Forman Corporation, and as such has citizenship identical with Brown Forman Corporation, which is incorporated in the

State of Delaware and has its principal place of business in the
Commonwealth of Kentucky.  See subparagraph 14 (o), above.

q)     Diageo Plc is an English corporation with its principal place of business in
London, England.

r)     Diageo North America is incorporated in the State of Connecticut and has
its principal place of business in the State of Connecticut.

s)     Paddington, Ltd. is not a corporation or other business entity, but one of
the names under which Diageo North America does business, and as such
has no "citizenship" separate from Diageo North America (*see* sub-
paragraph 14(r), above)).

## FRAUDULENT JOINDER OF THE BEER INSTITUTE

15)     The Beer Institute is a non-profit corporation that is incorporated in and has its
principal place of business in the District of Columbia.  (Compl. ¶ 33.)  However, the citizenship
of The Beer Institute should be disregarded for the purposes of diversity jurisdiction because it
has been fraudulently joined in order to defeat this Court's jurisdiction pursuant to 28 U.S.C.
§ 1332.  As reflected and implied in the Complaint, The Beer Institute is a trade association that
does not manufacture, sell, advertise or market any alcohol beverage brand or product.

16)     The plaintiff's joinder of The Beer Institute does not deprive this Court of subject
matter jurisdiction because no cause of action has been or can be asserted against this defendant
on the allegations of the Complaint.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)
("[A] right of removal cannot be defeated by fraudulent joinder of a . . . defendant having no real
connection with the controversy."); *see also In re Tobacco/Governmental Health Care Costs
Litig.*, 100 F. Supp. 2d 31, 39 (D.D.C. 2000) (joinder is fraudulent where "there is no possibility

the plaintiff can establish a cause of action against the resident defendant"); *Hugger v. The Rutherford Inst.*, No. 02-1520, 2003 WL 2008242 at *5 (4th Cir. May 2, 2003) (unpublished opinion) (applying North Carolina law, court found joinder of defendant to be a "sham" because it had not independently performed any act or omission that would create liability on its part under the theories pled). Specifically, there is no possibility that the plaintiff can state a cause of action against The Beer Institute on any of the four theories set forth in plaintiff's complaint.

17)   Count I: Unfair or Deceptive Trade Practices:   Plaintiff cannot assert a claim against The Beer Institute under the DCCPPA.

   a)   First, it is well settled as a matter of law that a non-profit organization like The Beer Institute cannot be liable under the Act. *See* Compl. ¶ 33; *Schiff v. Am. Ass'n of Retired Perss.*, 697 A.2d 1193, 1197 (D.C. 1997) ("[W]e hold, as a matter of law, that Schiff's claim against AARP fails because AARP is a non-profit organization."); *Save Immaculata v. Immaculata Preparatory Sch.*, 514 A.2d 1152, 1159 (D.C. 1986) (same); *Armstrong v. Accrediting Council for Continuing Educ. & Training*, 832 F. Supp. 419, 425 (D.D.C. 1993)(same), *vacated on other grounds*, 84 F.3d 1452 (D.C. Cir. 1996) (*per curiam*); *Kazup v. Georgetown Univ.*, 663 F. Supp. 1048 (D.D.C. 1987) (same).

   b)   Second, the Act creates liability only for "merchants" engaged in unlawful trade practices. A "merchant" is defined in the Act as a "person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code Ann. § 28-3901(a)(3). The Beer Institute is not alleged to be, and is not, a merchant and plaintiff's purported claims against it therefore do not and can never fall within the Act. *See* D.C. Code Ann. § 28-3901(a)(3).

c)      Third, plaintiff does not and cannot allege that The Beer Institute has been part of a "consumer transaction involving the sale of goods or services," and thus fails to bring his allegations against The Beer Institute within the scope of the DCCPPA. *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989). The DCCPPA "was designed to police trade practices arising only out of consumer-merchant relationships," *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709, which are not alleged and can not be alleged to exist between the plaintiff or any other consumer and The Beer Institute. Because the plaintiff does not and cannot allege that he or anyone else entered into a commercial transaction with The Beer Institute relevant to the allegations of the complaint, his allegations under the Act fail to state a cause of action against The Beer Institute.

d)      Fourth, plaintiff's allegation that The Beer Institute "aids and abets the defendant alcoholic beverage manufacturers in violating the [DCCPPA]" fails as a matter of law. (Compl. ¶ 66(h).) There can be no claim for "aiding and abetting" a manufacturer under the Act. *Armstrong*, 832 F. Supp. at 425 (finding that "no provision of the DCCPPA creates a cause of action for aider-and-abettor liability; in the absence of such a provision, the court must assume that the Council intended to make liable only those who actually violate the DCCPPA"); *see also Cent. Bank v. First Interstate Bank*, 511 U.S. 164, 179-180 (1994) (when legislature enacts statute containing a private right of action but does not specifically address liability for aiding and abetting, it is error to presume that an aiding and abetting claim may be brought under the same statute).

18)     Count II:  Unjust Enrichment:  Plaintiff does not and cannot state a cause of action for unjust enrichment against The Beer Institute. The plaintiff does not plead any transaction between himself or any third party, on the one hand, and The Beer Institute on the

other, in which any benefit has been conferred by the plaintiff upon The Beer Institute as required by District law. *Emerine v. Yancey,* 680 A.2d 1380, 1383 (D.C. 1996); *H.G. Smithy Co. v. Washington Med. Ctr.*, 374 A.2d 891, 893 (D.C. 1977).

19)     <u>Count III: Negligence:</u>  The plaintiff's negligence claim is not and can not be pleaded against The Beer Institute.

a)     First, the complaint's negligence count complains only of the alleged conduct of "manufacturers and distributors," and does not address the conduct of The Beer Institute in any respect. (Compl. ¶ 101.) Further, the specific conduct described in the negligence count does not even reference The Beer Institute. (Compl. ¶ 102:  number of advertisements; alleged failure of companies to take steps to prevent underage consumption of "their" products.)  Plaintiff asserts that these acts and omissions foreseeably induce underage persons to illegally consume "defendant's alcoholic beverages." (*Id.*)  It is beyond dispute that none of these allegations could possibly apply to The Beer Institute, which does not manufacture, market or sell alcohol beverages.

b)     Second, the complaint fails entirely to allege the existence of a legally cognizable duty running from The Beer Institute to the plaintiff. *Wilson v. Good Humor Corp.*, 757 F.2d 1293, 1297 n.3 (D.C. Cir. 1985); *Bell v. Colonial Parking, Inc.*, 807 F. Supp. 796, 797 (D.D.C. 1992), *aff'd,* 8 F.3d 71 (D.C. Cir. 1993) (table).  Whether a defendant owes a specific plaintiff a duty is a question of law for the Court. *Croce v. Hall*, 657 A.2d 307, 310 (D.C. 1995) (quoting W. Page Keeton, *Prosser & Keeton on Torts* § 37, at 236 (5th ed. 1984)).  Duties arise only on the basis of a pre-existing relationship between the parties, or between the defendant and an injury-causing third party, that creates in the defendant both the obligation and ability to protect the plaintiff or to control the third party actor. *District of Columbia v. Beretta U.S.A.*

*Corp.*, No. Civ. A. 0428-00, 2002 WL 31811717 at *11-12 (D.D.C. Dec. 16, 2002) (citing *Hall*

*v. Ford Enter. Ltd.*, 445 A.2d 610, 611 (D.C. 1982)); Prosser, *Handbook of the Law of Torts* § 56

at 341-42 (4th ed. 1971). Under District of Columbia law, the relationships that support the

imposition of a duty include "landowner to invitee, businessman to patron, employer to

employee, school district to pupil, hospital to patient, and common carrier to passenger." *Hall,*

445 A.2d at 611 n.4. Plaintiff's complaint alleges no relationship between plaintiff and The Beer

Institute sufficient to support a duty, and none exists.

      Indeed, District of Columbia courts have repeatedly and affirmatively held that a

defendant has no duty to prevent the illegal, intentional or reckless acts of third parties, absent a

heightened, special relationship which permits the defendant to control the third party's criminal

acts. *Delahanty v. Hinkley,* 564 A.2d 758, 762 (D.C. 1989) ("'In general no liability exists in tort

for harm resulting from the criminal acts of third parties, although liability for harm sometimes

may be imposed on the basis of a special relationship between the parties.' We are not inclined

to extend the rationale of those decisions to the present case. Appellants have alleged no special

relationship with the gun manufacturers and have suggested no reasonable way that gun

manufacturers could screen the purchasers of their guns to prevent criminal misuse.") (citations

omitted); *Hall,* 445 A.2d at 611 n.4 (same). Plaintiff here does not and cannot plead that he and

his minor child or children had a relationship with The Beer Institute such that this defendant

could control those minors' illegal procurement or consumption of alcohol beverages.

      c)    Third, numerous courts have held that, as a matter of law, no duty exists

on the part of a trade association, to protect the general public in relation to products

manufactured or installed by its members. *See Meyers v. Donnatacci*, 531 A.2d 398 (N.J. Super.

Ct. Law. Div. 1987) (holding that a trade association owed no duties to the public in relation to

the products sold by its members); *Bailey v. Edward Hines Lumber Co.*, 719 N.E.2d 178, 180-185 (Ill. App. Ct. 1995) (trade association owed no duty to consumers). The plaintiff here cannot state a cognizable duty on The Beer Institute's part with regard to the sale of alcohol beverages by independent companies.

          d)      Finally, District of Columbia precedent is clear that plaintiff cannot state a negligence cause of action for injuries resulting from the consumption of alcohol against a defendant which is not engaged in the sale or commercial delivery of alcohol beverages to consumers. *Wadley v. Aspillaga*, 163 F. Supp. 2d 1, 6 (D.D.C. 2001) (no negligence liability for social hosts who serve alcohol). The plaintiff does not allege - - and can never allege - - that The Beer Institute markets or sells alcohol beverages to consumers.

      20)    <u>Count IV: Rescission:</u>  Rescission is a remedy, not a cause of action. *Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001). Further, as a matter of law, plaintiff has pled no basis upon which he can seek the equitable remedy of rescission against The Beer Institute. The plaintiff has not pled that he or his child or children and The Beer Institute entered into any transaction, agreement or other contract. (Compl. ¶¶ 105-107.) It is axiomatic that there can be no rescission where there is no transaction between plaintiff and The Beer Institute to be rescinded. *See In re Estate of Johnson*, 820 A.2d 535, 539 (D.C. 2003) (rescission seeks "to restore the aggrieved party to that party's position at the time the contract was made as opposed to seeking damages for breach of contract") (internal citation omitted); *Dean,* 779 A.2d at 915 ("[A] party seeking rescission must restore the other party to that party's position at the time the contract was made").

      21)    In addition to his inability to state any cognizable cause of action against The Beer Institute as just described, all of plaintiff's claims are also barred as a matter of law because

plaintiff has not pleaded, and cannot plead, that there was a legally sufficient causal connection between conduct of The Beer Institute and any injury allegedly suffered by plaintiff or any member of the proposed class.

      a)     First, the complaint fails entirely to allege <u>any</u> causal connection between The Beer Institute's alleged acts and injury to the plaintiff. The plaintiff's complaint reflects that he is not, himself, the consumer allegedly defrauded or to whom defendants' products were allegedly negligently marketed. *See, e.g.,* Compl. ¶ 7. Nor does plaintiff allege that his child or children have themselves used family assets to illegally purchase alcohol of any kind. Plaintiff's complaint thus fails to plead any causal nexus between him and defendants' alleged acts. In particular, plaintiff fails to plead any causal nexus between himself and The Beer Institute's acts. But such a causal nexus is a fundamental element of all plaintiff's causes of action. Because he has failed to plead this causal element, all his claims must fail. *See, e.g., Smith,* 108 F. Supp. 2d at 18-19 (plaintiff "must show that defendants' allegedly deceptive trade practices caused her injuries").

      b)     Second, even if plaintiff were able to plead a causal connection between The Beer Institute's alleged acts and his supposed injury (which he cannot), the injury plaintiff alleges is too remote as a matter of law from any conduct on The Beer Institute's part to make out a legally sufficient claim. Plaintiff claims that underage purchasers were <u>directly</u> harmed by defendants' alleged acts, and that he and other parents of underage purchasers were <u>indirectly</u> harmed -- the harm to the parents was a consequence of the direct harm allegedly caused to their children. But the law is well-settled that a claim to redress an indirect injury caused by a prior injury to another person does not state a claim as a matter of law. *See, e.g., Holmes v. SIPC,* 503 U.S. 258, 266 n.10 (1992) (proximate

cause "demand[s]" a "direct relation between the injury asserted and the injurious conduct alleged"; economic harm caused by prior injury to another was "too remote" from illegal acts to allow recovery); *Serv. Employees Int'l Union Health & Welfare Fund v. Phillip Morris, Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001) (quoting the district court: "the 'tortured path' from the defendants' alleged wrongdoing to the [plaintiff's] increased expenditures demonstrates that [the plaintiff's] claims are precisely the type of indirect claims that the proximate cause requirement is intended to weed out" on a dispositive motion); *District of Columbia*, 2002 WL 31811717 at *26-28.

22)      Finally, plaintiff includes certain allegations entitled "Fraudulent Concealment" in an apparent attempt to toll the 3-year statute of limitations so as to assert claims based on advertising and marketing back to 1982.  (Compl. ¶¶ 109-111.)  The complaint itself does not denominate or frame the fraudulent concealment allegations as a purported "cause of action," as it does the purported DCCPPA, negligence, unjust enrichment and rescission "causes of action." Even if it did, District of Columbia courts have not recognized allegations of fraudulent concealment as an independent tort.  *See, e.g., Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996); *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 55 (D.D.C. 2001); *District Cablevision Ltd. P'ship v. Bassim*, 828 A.2d 714, 729 (D.C. 2003).  Moreover, the plaintiff has identified neither fraud nor concealment on The Beer Institute's part.[2]  Indeed, plaintiff's allegations negate

---

[2]      The only speech plaintiff has even attempted to allege falls within the categories of political association and core political and commercial speech about a matter of governmental interest that are protected by the First Amendment and the Noerr-Pennington doctrine and, as such, cannot form the basis of liability.  *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). There are thousands of trade and other associations in the District of Columbia exercising similar rights, and if avoiding federal jurisdiction were as easy as simply joining one of them to a suit based on their First Amendment activities, then no District of Columbia case would be removable.  This Court need not reach the constitutional questions, however, because plaintiff's

the concept of concealment, describing The Beer Institute's statements as "highly publicized" and quoting a public statement of its representative. (Compl. ¶ 111.)[3] The mere failure to disclose a piece of information does not constitute fraud unless there is a fiduciary duty to speak; plaintiff has not alleged and cannot allege such a duty as to The Beer Institute here. *Loughlin v. United States*, 209 F. Supp. 2d 165 (D.D.C. 2002) ("fraud can arise from nondisclosure but mere silence does not constitute fraud unless there is a duty to speak.")

WHEREFORE, the defendants, Zima Beverage Company, Adolph Coors Company and Coors Brewing Company, pray for removal of this above-entitled and numbered cause from the Superior Court of the District of Columbia to this Honorable Court.

Respectfully submitted,

Date: December 23, 2003

Of Counsel
Helgi C. Walker, Esq.
Wiley Rein & Fielding LLP

Thomas W. Kirby, Esq. (D.C. Bar No. 915231)
Brian Nuterangelo, Esq. (D.C. Bar No. 445275)
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
Tel.  202.719.7000
Fax.  202.719.7049

**Counsel for Zima Beverage Company, Adolph Coors Company and Coors Brewing Company**

---

claims all fail on other grounds. *Escambia Cty., Fla. v. McMillan*, 466 U.S. 48, 51 (1984) (*per curiam*).

[3]     The Complaint's only factual allegation involving The Beer Institute - - that it publishes but does not enforce a set of voluntary advertising and marketing guidelines for its members - - is publicly stated by The Beer Institute. (Compl. ¶ 111.) Plaintiff wholly fails to specifically and factually allege any purportedly fraudulent statement or act by The Beer Institute as required under Rule 9(b) of the Federal Rules of Civil Procedure. *Kowal*, 16 F.3d at 1276; *Witherspoon v. Phillip Morris, Inc.*, 964 F. Supp. 455, 463-64 (D.D.C. 1997).