```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

| | |
|---|---|
| AYMAN R. HAKKI, on behalf of ) <br> himself, all others similarly ) <br> situated, and the general ) <br> public, ) <br>                              ) <br>         Plaintiff,           ) <br>                              ) <br>    v.                        ) <br>                              ) <br> ZIMA COMPANY, et al.,        ) <br>                              ) <br>         Defendants.          ) <br> _____) | Civil Action No. <br> 03-2621 (GK) |

## MEMORANDUM OPINION

Plaintiff, Ayman R. Hakki, a resident of the District of Columbia, on behalf of himself, all others similarly situated, and the general public, brings this suit alleging negligence, rescission, unjust enrichment and violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, et seq.. Defendants are nineteen alcoholic beverage manufacturers[1] and The Beer Institute, an affiliated trade association. This matter is before the Court on The Beer Institute's Motion to Dismiss. Upon consideration of the Motion,

---

[1] The alcoholic beverage manufacturers named as Defendants in this action are: (1) Zima Company; (2) Mike's Hard Lemonade Company; (3) Adolph Coors Company; (4) Coors Brewing Company; (5) Mark Anthony Group; (6) Mark Anthony International; (7) Mark Anthony Brands, Ltd.; (8) Bacardi USA, Inc.; (9) Bacardi Limited; (10) Bacardi & Company Limited; (11) Bacardi Group; (12) Kobrand Corporation; (13) Heineken, N.V.; (14) Heineken USA, Inc.; (15) Brown-Forman Corporation; (16) Brown-Forman Beverages Worldwide; (17) Diageo PLC; (18) Diageo North America, Inc. and (19) Paddington, Ltd..

Opposition, Reply, and the entire record herein, and for the reasons stated below, the Court denies The Beer Institute's Motion to Dismiss and remands this case <u>sua sponte</u> to the Superior Court for the District of Columbia for lack of subject-matter jurisdiction.

**I.   BACKGROUND**

This case "arises from a long-running, sophisticated, and deceptive scheme by certain alcoholic beverage manufacturers to market alcoholic beverages to children and other underage consumers." Compl. ¶ 1.  According to Plaintiff, "[t]he primary purpose and effect of this ongoing scheme is to generate billions of dollars per year in unlawful revenue derived from sales of alcoholic beverages consumed by children and other underage consumers." <u>Id.</u>

Plaintiff points out that the Journal of the American Medical Association "recently reported that 'conservatively, underage drinkers drank 19.7% of the alcohol consumed in the United States in 1999, accounting for $22.5 billion.'" <u>Id.</u> ¶ 7.  Plaintiff claims that "[f]ar from passively receiving [this] unintended windfall from this illegal and deadly trade to underage drinkers, defendants instead engage in active, deliberate, and concerted efforts to maximize their profits by attempting to establish brand loyalty among underage consumers and encouraging them to buy their products." <u>Id.</u> ¶ 8.  Specifically, Plaintiff alleges that

Defendants have engaged in "numerous unfair and deceptive acts and practices" including:

> (a) extensive advertising in youth oriented media; (b) the use of advertising themes that appeal to underage drinkers; (c) web sites designed to generate visits by underage consumers with illusory age restrictions that are readily accessible by minors; (d) extensive market and behavioral research regarding underage consumers; (e) the use of cartoon and other promotional characters designed to appeal to underage consumers; (f) repeated and highly publicized denials that their advertising and marketing efforts are directed at underage drinkers when they were fully aware that those denials are false; (g) 'public service' advertisements purportedly discouraging underage drinking but which in truth are designed to have, and in fact do have precisely the opposite effect; (h) sponsoring promotional events on school campuses and at spring break venues where a large portion of the audience is under the age of 21; (i) the sale and distribution of apparel, toys, and promotional items designed to appeal to underage consumers; (j) the widespread use of advertising themes encouraging rule breaking, juvenile, and risky behavior; (k) the use of code-words to conceal and disguise research and marketing efforts directed at children and underage drinkers; (l) conducting secret market research into the drinking habits of underage drinkers; (m) the use of secretive and unconventional marketing and research methods; (n) advertising their products in media that disproportionately are watched and read by underage consumers; (o) public denials that their marketing efforts increase the quantity of marketed products that are sold and consumed by underage consumers; (p) making knowingly false statements that alcoholic beverage advertising does not increase the likelihood that underage consumers will commence drinking or increase the quantity that they drink; (q) the deliberate use of actors and spokespersons whom underage consumers perceive as below the legal drinking age; and (r) advertising in media where teenagers are more likely to view alcohol advertisements than adults over the age of 21.

Id.

The Beer Institute, one of the named Defendants in this case, is "a District of Columbia nonprofit corporation." Id. ¶ 33. According to Plaintiff, The Beer Institute, which is "wholly controlled and directed by defendants and other alcoholic beverage manufacturers," "functions as an important facilitator, accomplice, and participant in the alcoholic beverage manufacturers' unfair and deceptive scheme to market alcoholic beverages to children and other underage consumers." Id. ¶ 66. Specifically, Plaintiff claims that The Beer Institute

> (a) assists defendants in making false statements regarding defendants' marketing efforts and underage consumers; (b) helps defendants develop and implement strategies and tactics to conceal their marketing efforts directed at underage consumers; (c) actively discourages alcoholic beverage manufacturers from criticizing or calling attention to any other alcoholic beverage manufacturers' marketing efforts directed at underage consumers; (d) makes false statements regarding the marketing efforts and trade practices of defendants; (e) serves as a clearing house and depository for information defendants utilize in developing, implementing, and perpetuating their illegal scheme to unfairly and deceptively market alcoholic beverages to underage consumers; (f) acts as a shield to deflect, obscure, and discourage public complaints about the alcohol industry's marketing practices toward underage consumers; (g) represents that it has a sponsorship, approval, status, affiliation, certification, or connection that it does not have, including passing itself off as a governmental or regulatory body that is independent of the alcoholic beverage manufacturers; and (h) aids and abets the defendant alcoholic beverage manufacturers in violating the [CPPA].

Id. In short, according to Plaintiff, The Beer Institute "participates as a partner of and tool for the industry in the scheme to market alcoholic beverages to kids." Pl.'s Opp'n at 2.

Plaintiff alleges that "[i]n addition to the human suffering inflicted on society, defendants' conduct has caused, and continues to cause, enormous economic injuries to plaintiff and the classes he seeks to represent." Id. ¶ 6. Specifically, Plaintiff claims that "[p]arents and guardians in the District of Columbia and throughout the country are victimized as billions of dollars in family assets are transferred to defendants as part of the far-reaching illegal trade in alcoholic beverages." Id.

On November 14, 2003, Plaintiff filed the instant action in the Superior Court for the District of Columbia seeking damages, disgorgement and restitution of certain revenues and other declaratory and injunctive relief under the CPPA and the District of Columbia common law of negligence, rescission and unjust enrichment.

On December 23, 2003, Defendants Zima Company, Adolph Coors Company and Coors Brewing Company removed the instant action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[2]  Both Plaintiff and The Beer Institute, however, are citizens of the District of Columbia.[3]  See Compl. ¶¶ 23, 33.[4]  In

---

[2] Defendants Zima Company, Adolph Coors Company and Coors Brewing Company represented that all Defendants "upon whom purported service has been made" have consented to the removal. Def.s' Notice of Removal, ¶ 4.

[3] A court lacks diversity jurisdiction if there are litigants from the same state on opposing sides of the controversy. See 28 U.S.C. § 1332(a)(1); Prakash v. Am. Univ., 727 F.2d 1174, 1178 n.25
(continued...)

their Notice of Removal, Defendants Zima Company, Adolph Coors Company and Coors Brewing Company argued that the presence of The Beer Institute as a named Defendant in the instant action does not deprive this Court of subject matter jurisdiction because The Beer Institute was "fraudulently joined." Def.s' Notice of Removal, ¶ 16. On December 23, 2003, The Beer Institute filed the instant Motion to Dismiss.

Before the Court can rule on The Beer Institute's Motion to Dismiss, it must first determine whether it has subject-matter jurisdiction over this action. See Empagran S.A. v. F. Hoffman-LaRoche, Ltd., -- F.3d --, 2004 WL 2434616 (D.C. Cir.) ("'Jurisdiction is, of necessity, the first issue for an Article III court. The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds.'") (quoting Tuck v. Pan Am. Health Org., 668 F.2d 547, 549 (D.C. Cir. 1981)); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 548 (5th Cir. 1981) ("Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the

---

[3](...continued)
(D.C. Cir. 1984).

[4] A corporation is deemed to be a citizen of the state in which it is incorporated and the state where it maintains its principal place of business. See 28 U.S.C. § 1332(c)(1).

federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect."). Specifically, it must be determined whether The Beer Institute was "fraudulently joined."

## II. STANDARD OF REVIEW

"'In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the ... defendant into state court.'" In re Tobacco/Governmental Health Care Costs Litig., 100 F.Supp.2d 31, 39 (D.D.C. 2000) (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)). The burden of establishing fraudulent joinder is a "'heavy one.'" In re Tobacco/Governmental Health Care Costs Litig., 100 F.Supp.2d at 39 (quoting Pacheco de Perez v. AT&T, 139 F.3d 1368, 1380 (11th Cir. 1998)).

"If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Crowe, 113 F.3d at 1538. See Brown v. Brown & Williamson Tobacco Corp., 26 F.Supp.2d 74, 77 (D.D.C. 1998) ("It is not enough to show a likelihood of ultimate success in the action; the defendant must show that the plaintiff has no possibility of a right to relief.") (internal

quotation omitted) (emphasis in original); Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004) (same); Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (same); Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) (same). "Unless a state law claim is wholly nonsensical, remand is the appropriate course of action." Brown, 26 F.Supp.2d at 77 (internal quotation omitted). "This consequence makes sense given the law that 'absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination.'" Crowe, 113 F.3d at 1538 (quoting Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962)).

Finally, to determine whether a resident defendant has been fraudulently joined "'the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor.'" In re Tobacco/Governmental Health Care Costs Litig., 100 F.Supp.2d at 39 (quoting Pacheco de Perez, 139 F.3d at 1380).

**III. ANALYSIS**

Defendants argue that "[t]he plaintiff's joinder of The Beer Institute does not deprive this Court of subject-matter jurisdiction because no cause of action has been or can be asserted against this defendant on the allegations of the Complaint."

-8-

Def.s' Notice of Removal, ¶ 16.  The Court must now determine whether the facts alleged in Plaintiff's Complaint "state even an <u>arguable</u> cause of action under [District of Columbia] law." <u>Crowe</u>, 113 F.3d at 1539 (emphasis in original).  The answer is "yes."

Plaintiff alleges that, "[b]y participating in a conspiracy to engage in acts that violate the CPPA and that are designed to unjustly enrich its co-conspirators, the Beer Institute bears full joint and several liability for the damages caused by its own actions and the actions of its co-conspirators." Pl.'s Opp'n at 10.  Defendants argue that Plaintiff's conspiracy theory of liability fails because Plaintiff (1) "has failed to plead an agreement to which the Beer Institute is an alleged part," Def.'s Reply at 11; and (2) "has not pled facts showing that he has suffered any particularized injury to himself, much less actual damages flowing from any defendant's act."[5]  <u>Id.</u>

---

[5] Defendants also argue that the CPPA "does not permit an 'aiding-and-abetting' theory of vicarious liability." Def.s' Reply at 8.  This argument is misplaced, however, as Plaintiff alleges a civil conspiracy theory of liability, not an aiding-and-abetting theory of liability. <u>See</u> <u>Halberstam v. Welch</u>, 705 F.2d 472, 477 (D.C. 1983) (distinguishing conspiracy and aiding-abetting, the latter of which includes the following elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation"). <u>See also</u> Compl. ¶ 66 (describing The Beer Institute as "an important <u>facilitator, accomplice, and participant</u> in the alcoholic beverage manufacturers' unfair and deceptive scheme") (emphasis added).

Under District of Columbia law, the elements of civil conspiracy are: "'(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) pursuant to, and in furtherance of, the common scheme.'" Executive Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 738 (D.C. 2000) (quoting Griva v. Davison, 637 A.2d 830, 848 (D.C. 1994)).  A court may infer the existence of an agreement. See Halberstam, 705 F.2d at 477 ("Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement.").  In determining whether an agreement existed, a court first looks to see whether the alleged co-conspirators are pursuing the same goal, although perhaps performing different functions, and whether they are in contact with one another. See id. at 481.  "To establish liability, the plaintiff also must prove that an unlawful overt act produced an injury and damages."  Id. at 477.  Once it is determined that a conspiracy has been formed, all parties to the conspiracy are civilly liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. Id. at 476-77.

The fact that Plaintiff may not ultimately prevail because he has failed to plead an agreement to which The Beer Institute is an alleged party or has not pled facts showing that he has suffered any particularized injury to himself does not necessarily mean that

he has failed to state a valid civil conspiracy theory of liability for purposes of the fraudulent joinder analysis. See Crowe, 113 F.3d at 1542 (emphasizing that, in the remand context, "the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent"). "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff" as it must, the Court concludes that there is "'a reasonable basis for predicting that the state law might impose liability on the facts involved.'" Id. at 1541-42 (quoting B, Inc., 663 F.2d at 549) (emphasis in original). At a very minimum, it cannot be said that there is "no possibility" of Plaintiff surviving a motion to dismiss in Superior Court. Brown, 26 F.Supp.2d at 77 (emphasis in original). See Crowe, 113 F.3d at 1538.

Thus, because it is possible that Plaintiff has stated a valid civil conspiracy theory of liability, The Beer Institute cannot establish fraudulent joinder.[6] With The Beer Institute in this case as a named Defendant, there is no diversity of parties as required by 28 U.S.C. 1332(a)(3). As no other basis for subject-matter jurisdiction is alleged, the Court must remand Plaintiff's

---

[6] In light of the Court's conclusion that the facts alleged in Plaintiff's Complaint state an arguable civil conspiracy theory of liability against The Beer Institute, the Court need not address any of Plaintiff's other claims against The Beer Institute.

case to the Superior Court for the District of Columbia. See Crowe, 113 F.3d at 1543 ("If removal is doubtful, we remand the case.").

### III. CONCLUSION

Accordingly, for the foregoing reasons, the Court denies The Beer Institute's Motion to Dismiss and remands this case sua sponte for lack of subject-matter jurisdiction to the Superior Court for the District of Columbia.

An Order will issue with this Memorandum Opinion.

December 10, 2004

/s/
GLADYS KESSLER
United States District Judge